IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RALPH CEDANO, INDIVIDUALLY, AND ON
BEHALF OF ALL OTHER PERSONS                         No. CV-10-237-HZ
SIMILARLY SITUATED,
                                                    OPINION AND ORDER
                        Plaintiff,

        v.

THRIFTY PAYLESS, INC. D/B/A RITE AID and
RITE AID CORP.

                        Defendants.

Steve D. Larson
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, OR 97204

Yoona Park
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, OR 97204

Fran L. Rudich (admitted pro hac vice)
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573

Seth R. Lesser (admitted pro hac vice)
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573

        Attorneys for Plaintiff

Leah C. Lively
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
222 SW Columbia Street, Suite 1500
Portland, OR 97201

Elizabeth A. Falcone (admitted pro hac vice)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
222 SW Columbia Street, Suite 1500
Portland, OR 97201

Daniel E. Turner (admitted pro hac vice)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree Street, NE, Suite 4800
Atlanta, GA 30303

Tracey T. Barbaree (admitted pro hac vice)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree Street, NE, Suite 4800
Atlanta, GA 30303

Beth A. Moeller (admitted pro hac vice)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree Street, NE, Suite 4800
Atlanta, GA 30303

        Attorneys for Defendants

HERNANDEZ, District Judge:

Plaintiff Ralph Cedano ("Plaintiff" or "Cedano") alleges that Defendants Thrifty Payless,

Inc., doing business as Rite Aid ("Rite Aid"), and Rite Aid Corporation's ("Rite Aid Corp.")

2 - OPINION AND ORDER

(collectively, "Defendants") misclassified him as an Assistant Store Manager ("ASM") exempt from overtime wages in violation of Oregon wage and hour laws.  Second Am. Compl., ¶¶ 1, 32.  He brings this action on his own behalf and on behalf of others similarly situated and employed by Defendants in the State of Oregon.  Id. p. 1.

Now before me  are the remaining issues to be resolved in (1) Plaintiff's Motion to Compel (doc. #40); (2) Plaintiff's Motion to Compel Re Depositions (doc. #56); and (3) Defendants' Motion for Protective Order Re: Depositions (doc. #48).  Also before this court is Defendants' Motion to Stay Proceedings (doc. #37).

## BACKGROUND

Plaintiff alleges that he was employed as an ASM at several of Defendants' Oregon stores from December 2006 to October 2007 and from April 2009 to May 2010.  See Second Am. Compl., ¶ 8.  Plaintiff brings this action on behalf of himself and a class of persons pursuant to Fed. R. Civ. P. 23(a)[1], (b)(2) and (b)(3).[2]  See Second Am. Compl., ¶ 11, Prayer for Relief.

---

[1] Fed. R. Civ. P. 23(a) sets forth four threshold requirements for all class actions.  It provides that a class action may be maintained only if each of the following elements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

[2] In addition to satisfying the elements of Fed. R. Civ. P. 23(a), Plaintiff must also meet at least one of the prongs of Fed. R. Civ. P. 23(b).  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Fed. R. Civ. P. 23(b)(2), a class may be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

(continued...)

3 - OPINION AND ORDER

Plaintiff claims that Defendants misclassified ASMs as exempt from overtime wages even though their actual job functions involved no managerial or executive tasks.  He claims that this is a violation of Oregon wage and hour laws, including ORS 653.261[3], OAR 839.020-0030[4], ORS 653.055[5], and ORS 653.045.[6]  See Second Am. Compl., ¶¶ 1, 32, 37, 39, 41.  Plaintiff seeks an award of more than $5 million in monetary damages, a declaratory judgment that Defendants' actions are unlawful under Oregon law, and an injunction against Defendants from engaging in alleged unlawful practices. See Second Am. Compl., ¶¶ 3, 32, 38, 42, and Prayer for Relief.

## PROCEDURAL HISTORY

---

[2](...continued)
class as a whole. . . ."  On the other hand, a class may be certified under Fed. R. Civ. P. 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

[3] ORS 653.261(1) provides in pertinent part: "The Commissioner of the Bureau of Labor and Industries may adopt rules prescribing such minimum conditions of employment, excluding minimum wages, in any occupation as may be necessary for the preservation of the health of employees."

[4] OAR 839.020-0030(1) provides in pertinent part: "Except as provided in OAR 839-020-0125 to 839-020-0135, all work performed in excess of forty (40) hours per week must be paid for at the rate of not less than one and one-half times the regular rate of pay when computed without benefits of commissions, overrides, spiffs, bonuses, tips or similar benefits pursuant to ORS 653.261(1)."

[5] Under ORS 653.055(1), "[a]ny employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected: (a) For the full amount of the wages, less any amount actually paid to the employee by the employer; and (b) For civil penalties provided in ORS 652.150."

[6] ORS 653.045(1) requires that "[e]very employer required by ORS 653.025 or by any rule, order or permit issued under ORS 653.030 to pay a minimum wage to any of the employer's employees shall make and keep available to the Commissioner of the Bureau of Labor and Industries for not less than two years, a record or records . . . ."

4 - OPINION AND ORDER

The pertinent procedural history is as follows: The Complaint (doc. #1) was filed on March 2, 2010. An Amended Complaint (doc. #3) and a Second Amended Complaint (doc. #31) were filed on March 15, 2010, and December 16, 2010, respectively.[7]

On February 17, 2011, this case was reassigned from the Honorable Garr M. King to me. On March 4, 2011, Defendants filed a Motion to Stay Proceedings (doc. #37) pending the Supreme Court's review of the Ninth Circuit's decision in Dukes v. Wal–Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010) (en banc), cert. granted, 131 S. Ct. 795 (Dec. 6, 2010).[8] On March 7, 2011, Plaintiff filed a Motion to Compel seeking an order compelling written discovery of Plaintiff's first set of interrogatories, namely the contact information of ASMs, Store Managers ("SMs") and District Managers ("DSMs") who worked in Defendants' Oregon stores.[9]

On March 10, 2011, Defendants filed a Motion for Protective Order re: Depositions seeking an order barring Plaintiff from taking the depositions of SMs Denelda Horton ("Horton"), John Chamberlain ("Chamberlain"), and Paul Oleson ("Oleson"). On March 18, 2011, Plaintiff filed a response to Defendants' Motion for Protective Order (doc. #51) and a response to Defendants' Motion for Stay (doc. #52).

---

[7] Answers were filed in response to all three complaints. The Second Amended Complaint added Cedano. Although Sandra Zirkel ("Zirkel") was the original plaintiff in this case, she filed a Stipulation of Voluntary Dismissal (doc. #32) on December 17, 2010, because she did not disclose her claims against Defendants as an asset in her bankruptcy.

[8] Defendants assert that the Supreme Court is expected to render its decision in Dukes by June 2011.

[9] Plaintiff's interrogatories requested, among other things, that Defendants "[i]dentify the Store Managers and District Managers who worked in Defendants' stores in Oregon," and "[s]tate the names, addresses, dates of employment, and locations of employment of Assistant Store Managers employed by Defendants." See Defs.' Resp. to Pls.' First Set of Interrog. to Defs., p. 6, 9.

On March 24, 2011, Plaintiff filed a second Motion to Compel, titled as Plaintiff's Motion to Compel Re Depositions (doc. #56). Plaintiff's Motion to Compel Re Depositions seeks an order compelling the depositions of seven of Defendants' supervisors.[10] On March 25, 2011, Defendants' filed a response to Plaintiff's Motion to Compel.

After oral argument on April 1, 2011, I granted in part, denied in part, and reserved ruling in part Defendants' Motion for Protective Order, Plaintiff's first Motion to Compel, and Plaintiff's Motion to Compel Re Depositions.[11] A key point of contention was the Honorable Martin C. Carlson's ruling in <u>Craig v. Rite Aid Corp.</u>, No. 08-cv-2317, 2009 WL 4723286, at *1 (M.D. Pa. 2009), which according to Defendants, would guide Defendants on how they were to communicate with opt-in managers represented by counsel in <u>Indergit</u>, No. 08 Civ. 9361(PGG), 2009 WL 1269250, at *1.[12] Accordingly, I ordered that both parties provide me with a copy of Judge Carlson's ruling in that case so that I could rule on the remaining issues in the pending motions before this court.

On April 4, 2011, Defendants filed their Reply In Support of Defendants' Motion for Stay. On April 7, 2011, Defendants' filed their response to Plaintiff's Motion to Compel Re

---

[10] Plaintiff was supervised by seven managers, three of whom are Horton, Chamberlain, and Oleson. The other four are SMs who opted in as plaintiffs in <u>Indergit v. Rite Aid Corp.</u>, No. 08 Civ. 9361(PGG), 2009 WL 1269250, at *1 (S.D.N.Y. 2009). <u>See</u> Park Decl. in Opp'n to Defs.' Mot. for Protective Order Re: Deps. and Defs.' Mot. to Stay Proceedings, Ex. 4.

[11] Although Plaintiff's Motion to Compel Re Depositions was not scheduled for oral argument on April 1, 2011, the parties consented to my addressing this motion.

[12] In <u>Craig</u>, Defendants' current and former ASMs were conditionally certified as a collective class under the Fair Labor Standards Act ("FLSA"). The court in <u>Craig</u> also permitted the depositions of fifty of Defendants' SMs.

Depositions.[13]  Pursuant to my order, both parties filed a copy of Judge Carlson's April 5, 2011, decision in Craig.  Plaintiff submitted a letter dated April 25, 2011, to this court and to which was attached a copy of the proposed notice to prospective deponents in Craig and a proposed notice to prospective deponents in this case.  Defendants submitted a letter dated on the same date, stating among other things, their objections to Plaintiff's proposed notice.

Lastly, at oral argument on April 26, 2011, the court denied Defendant's Motion to Stay the Proceedings, and stated that a written ruling regarding that motion would be forthcoming.

**STANDARDS**

**I. Motion to Compel**

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  It specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.  However, the court should limit the scope of discovery under the following specified circumstances:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed, by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

---

[13] The response to Plaintiff's Motion to Compel Re Depositions was not necessary, but was filed out of an abundance of caution because the parties had agreed that Defendants' Motion for Protective Order Re: Depositions and Defendants' Motion for Stay already addressed the issues raised in Plaintiff's Motion to Compel Re Depositions.

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1) is to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case. See, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." Websidestory, Inc. v. Netratings, Inc., Civil No. 06cv408 WQH(AJB), 2007 WL 1120567, at *2 (S.D. Cal. 2007). Absent extraordinary circumstances, it is very unusual for a court to prohibit the taking of a deposition. Id.

If a party elects to oppose a propounding party's discovery requests, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome, or not relevant. See Ramos v. U.S. Bank Nat. Ass'n, No. CV 08-1150-PK, 2009 WL 3854108, at *2 (D. Or. 2009). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." See, e.g., Walker v. Lakewood Condo. Owners Assoc., 186 F.R.D. 584, 587 (C.D. Cal. 1999).

Fed. R. Civ. P. 37(a)(3)(B) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if:

> (i) a deponent fails to answer a question asked under Rules 30 or 31;
> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
> (iii) a party fails to answer an interrogatory submitted under Rule 33, or
> (iv) a party fails to respond that inspection will be permitted-or fails to permit

8 - OPINION AND ORDER

inspection-as requested under Rule 34.

Fed. R. Civ. P. 26(b)(1) provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

## II. Protective Order

Fed. R. Civ. P. 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Protective orders provide a safeguard for parties and other persons in light of the otherwise broad reach of discovery. Fed. R. Civ. P. 26(c), Advisory Comm. Notes (1970); United States v. Colum. Broad. Sys., Inc., 666 F.2d 364, 368-69 (9th Cir. 1982) (stating Fed. R. Civ. P. 26(c) "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)").

In order to establish good cause for issuance of a protective order, the party seeking protection bears the burden of showing that specific prejudice or harm will result if no protective order is granted. See Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (holding that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Fed. R. Civ. P. 26(c)); see also San Jose Mercury News, Inc. v. United States Dist. Court, 187 F.3d 1096, 1103 (9th Cir. 1999) (holding that to gain a protective order, the party must make a particularized showing of good cause with respect to any individual document). If a court finds particularized harm will result from disclosure of information to the public, it then balances the public and private interests to decide whether a protective order is necessary. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).

### III.  Motion to Stay

Regarding a motion to stay, a district court has the inherent power to control its own

docket and calendar. Mediterranean Enter., Inc. v. Ssangyong Constr. Corp., 708 F.2d 1458, 1465

(9th Cir. 1983); see also Fed. R. Civ. P. 16.  The district court should weigh the following

competing interests to determine whether to exercise its discretion to stay proceedings:

> [T]he possible damage which may result from the granting of a stay, the hardship or
> inequity which a party may suffer in being required to go forward, and the orderly
> course of justice measured in terms of simplifying or complicating issues, proof, and
> questions of law which could be expected from a stay.

CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citation omitted);  see also
Robinson v. Cannard, No. 09-CV-792-BR, 2009 WL 4042914, at *1 (D. Or. 2009).

Courts have interpreted the third factor as a question of judicial economy.  See 15

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and

Procedure, § 3866 (3d ed. 2007).

### DISCUSSION

### I. Motion to Compel Depositions and Motion for Protective Order

I turn first to Defendants' request that I provide them with guidance as to how to

communicate with the four SMs who opted in as plaintiffs in Indergit and who are

represented by counsel.  I find no law requiring me to provide Defendants with any such

guidance.

The Oregon Rule of Professional Conduct ("ORPC") 4.2 provides that "[i]n

representing a client . . ., a lawyer shall not communicate . . . on the subject of the

representation with a person the lawyer knows to be represented by a lawyer on that

subject unless: (a) the lawyer has the prior consent of a lawyer representing such other

person; (b) the lawyer is authorized by law or by court order to do so; . . . ."[14]

Defendants asserted at oral argument on April 1, 2011, that Judge Carlson's ruling

in <u>Craig</u> would address how Defendants were to proceed in light of their purported

violation of ORPC 4.2.  To avoid the possibility of issuing an order that would conflict

with Judge Carlson's ruling in <u>Craig</u>, I ordered the following on April 1, 2011: (1)

Plaintiff be allowed to proceed with depositions and written discovery of <u>non opt-in</u>

managers; (2) Plaintiff be precluded from proceeding with depositions of <u>opt-in</u>

managers; and (3) Defendants need not produce the contact information of any ASM,

DM, and SM until the parties had informed me of the court's decision in <u>Craig</u>.

Pursuant to my order on April 1, 2011, both parties  submitted a copy of Judge

Carlson's ruling in <u>Craig</u>.  They refer me to the same portion of that order, which provides

as follows:

> Third, with respect to the <u>Defendants' request for some form of guidance or notification</u> for potential deponents in this litigation who may be parties in other cases and may be represented by counsel in those cases, . . ., the Court agrees that some simple form of notice may be appropriate here, and the parties are directed to meet, confer, and prepare a draft form notice that could be sent to these deponents, for review and approval by the Court on or before April 18, 2011.

<u>Id.</u> at *3.

-----

[14] ORPC 4.2 also provides that a lawyer <u>may</u> communicate on the subject of the representation with a person the lawyer knows to be represented by a lawyer if:
  (a) the lawyer has the prior consent of a lawyer representing such other person;
  (b) the lawyer is authorized by law or by court order to do so; or
  (c) a written agreement requires a written notice or demand to be sent to such other person, in which case a copy of such notice or demand shall also be sent to such other person's lawyer.

11 - OPINION AND ORDER

In a letter sent submitted by Defendants dated April 8, 2011, Defendants accede that "Judge Carlson did not . . . address the ethical bounds of communications in the situation we have here: where the plaintiff was managed predominantly by Store Managers who have opted in to Indergit." Because Judge Carlson declined to set forth the "ethical bounds of communications" that Defendants may have with SMs represented in Indergit, I conclude that allowing Plaintiff to depose the four Indergit opt-ins in this case will not conflict with any of Judge Carlson's rulings. Moreover, there is no indication that Judge Carlson intends to issue a ruling providing guidance on how Defendants may communicate with deponents who are also represented by counsel in other actions. The court in Craig stated that "with respect to the Defendants' request for some form of guidance or notification for potential deponents in this litigation," the court "agrees that some simple form of notice may be appropriate here." As such, the court's order in Craig indicates that Judge Carlson declined to provide guidance on how Defendants are to communicate with opt-in plaintiffs represented by counsel in other matters, and simply ordered the parties to "prepare a draft form notice" subject to "review and approval" by the court. Like the court in Craig, I decline to direct Defendants on how they are to proceed with respect to ORPC 4.2.

Finally, Defendants assert that depositions of SMs Chamberlain, Oleson, and Horton would violate their substantive due process rights. Although they do no expound on this argument, they appear to assert that allowing Plaintiff to depose these three SMs violates their due process right to defend themselves, which includes the right to investigate the claims against them by speaking with their  managers "under the protection of attorney work product and attorney-client privilege." Mem. In Supp. of Def.'s Mot. for Protective Order Re: Deps., p. 11.

12 - OPINION AND ORDER

Defendants, however, cite no authority, and I do not find any supporting their argument.

Defendants further assert that ex parte contact with currently employed SMs and DMs "may violate other ethical rules based upon an asserted conflict of interest."  Defs.' Resp. to Pl.'s Mot. to Compel, p. 2, 4, 10.  Defendants fail to adequately argue this issue, and I find their argument unclear.  Moreover, in support of their proposition, Defendants repeatedly cite a letter from Seth R. Lesser ("Lesser"), an attorney at Klafter, Olsen & Lesser LLP ("Klafter") and the same attorney representing Plaintiff here.[15]  The letter dated February 7, 2011, was sent from Lesser to the court in Craig.  See Lively Decl. in Supp. of Defs.' Resp. to Pl.'s Mot. to Compel, ¶¶ 2, 8; Id., Ex. 6, p. 1-2.

It provides in pertinent part:

> From these cases, it has become clear that there is an [sic] an direct and inimical conflict between the interests of Store Managers and Assistant Store Managers in pressing misclassification claims, whether under the FLSA or under the state analogue statutes.  Our Assistant Store Manager clients routinely inform us (and the testimony that has been taken confirms) that such management decisions that are made in Rite Aid store [sic] (such as those decisions arise) are routinely "upstreamed" from the Assistant Store Managers to the Store Managers.  Pressing the claims means, invariably, imposing upon the claims of Store Managers.
> Accordingly, and hardly surprising, a direct conflict of interest exists, one that has evidence itself and will continue to evidence itself in this litigation.  The Indergit complaint asserts New York Labor Law claims on behalf of both New York Assistant Store Managers and Store Managers and the Indergit counsel cannot efficaciously represent both groups without harming the claims of one or the other, or both.

Id., Ex. 6, p. 2 (emphasis added).

After reviewing the letter, I find that the alleged conflict of interest asserted by

---

[15] Lesser also appears to represent a plaintiff in Witty v. Rite Aid Corporation, No. 1:11-cv-00012 (S.D.N.Y. 2010).

Defendants is inapposite to the specific issue of whether Plaintiffs are precluded from deposing the SMs here.

## II. Motion to Compel Contact Information

Defendants have refused to produce the names, addresses, and employment information of any ASM, DM, and SM.  Here, Plaintiff's First Set of Interrogatories to Defendants requests Defendants "[i]dentify the Store Managers and District Managers who worked in Defendants' stores in Oregon."[16]  See Pl.'s First Set of Interrog. To Defs., Ex. 3, p. 5.  Interrogatory No. 7 requests Defendants "[s]tate the names, addresses, dates of employment, and locations of employment of Assistant Store Managers employed by Defendants."  See Id., p. 6.  Plaintiff asserts that pursuant to Fed. R. Civ. P. 26(b)(1) he has a right to discover "any nonprivileged matter that is relevant to any party's claim or defense."  He asserts that his discovery requests are relevant to one or more claims or defenses that have been asserted in this action.

Plaintiff further argues that he is entitled to the identities of all the SMs and DMs.  See Defs.' Resp. to Pl.'s First Set of Interrog., Ex. 1, p. 6 (requesting Defendants "[i]dentify the Store Managers and District Managers who worked in Defendants' stores in Oregon.").  Plaintiff contends that he is entitled to discovery of the identities of the DMs in Oregon so that he may investigate whether there was a common decision to classify the ASMs as exempt, or whether such decisions were made on an individualized basis.

Plaintiff also argues that he is entitled to the name and address of every ASM employed by Defendants in Oregon.  He asserts that he is entitled to learn the identity of other potential

---

[16] "Identify" requires disclosure of a "full name, present or last known address, and present or last known place of employment."  See Pl.'s First Set of Interrog. To Defs., Ex. 3, p. 3.

members of the putative class, so that he can conduct class certification discovery on an equal footing with the Defendants.

### A. Prima Facie Showing

Defendants assert that Plaintiff has not met his burden under Ninth Circuit law showing that he is entitled to discovery of ASM contact and employment information.  They argue that Plaintiff has not made a prima facie showing that he can meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation pursuant to Fed. R. Civ. P. 23.   They argue that this fact alone provides grounds to deny Plaintiff's motion to compel.  They further argue that Plaintiff relies on cases that involve claims not brought under Fed. R. Civ. P. 23 or were decided under California state law.

"District courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court.'"  E.g., Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009) (citing Kamm v. Cal. City Dev. Co., 509 F.2d 205, 209 (9th Cir. 1975)); see also Oppenheimer Fund, 437 U.S. at 351 n.13 ("[D]iscovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation.").  "At the pre-class certification stage, discovery in a putative class action is generally limited to certification issues: e.g., the number of class members, the existence of common questions, the typicality of claims, and the representative's ability to represent the class."  Dysthe v. Basic Research, L.L.C., No. CV 09–08013 AG (SSx), 2011 WL 1350409, at *2 (C.D. Cal. 2011) (citing Oppenheimer Fund, Inc., 437 U.S. at 359).

15 - OPINION AND ORDER

Fed. R. Civ. P. 26(b)(1) allows the discovery of matters relevant to pre-class certification. See Dysthe, No. CV 09–08013 AG (SSx), 2011 WL 1350409, at *3.  Pursuant to Fed. R. Civ. P. 26(b)(1), the parties may obtain discovery regarding matters relevant to the action.  Fed. R. Civ. P. 26(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.  EEOC v. Lexus of Serramonte, No. C 05-0962 SBA, 2006 WL 2619367, at *5 (N.D. Cal. 2006).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

Because this issue involves whether or not discovery will be permitted, specifically whether Defendants must produce the contact information of ASMs, SMs, and DMs in Oregon, it therefore lies within the discretion of this court.  I find that the contact information of the ASMs, SMs, and DMS which Plaintiff seeks here is relevant to Plaintiff's class certification claim.  The contact information sought here may help to illuminate issues such as numerosity, common questions, typicality, and adequacy of representation and whether this suit should proceed as a class action under Fed. R. Civ. P. 23.  See Currie-White v. Blockbuster, Inc., No. C 09-2593 MMC (MEJ), 2010 WL 1526314, at *2 (N.D. Cal. 2010) (citation omitted); see also Babbitt v. Albertson's, Inc., No. C-92-1883 SBA (PJH), 1992 WL 605652, at *2 (N.D. Cal. 1992) (ordering defendant to produce "the names, addresses, telephone numbers and social security numbers of all of Albertson's employees since 1985") (emphasis added).  Indeed, "[t]he disclosure of names, addresses, social security numbers, and telephone numbers is a common practice in the class

action context." <u>E.g.</u>, <u>Currie-White</u>, No. C 09-2593 MMC (MEJ), 2010 WL 1526314, at *2 (citation omitted).

In support of their motion to stay, Defendants rely heavily on the Plaintiff's burden to make a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied. <u>See</u> <u>Mantolete v. Bolger</u>, 767 F.2d 1416, 1424 (9th Cir. 1985). However, they rely on a selective reading of the Ninth Circuit's holding. In its entirety, the Ninth Circuit stated that a "plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied <u>or</u> that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." <u>Id.</u> (emphasis added) (citing <u>Doninger v. Pac. Nw. Bell, Inc.</u>, 564 F.2d 1304, 1313 (9th Cir. 1977)); <u>Doninger</u>, 564 F.2d at 1313 (stating that "where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites, . . . the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations."). The Ninth Circuit's decision in <u>Mantolete</u> and <u>Doninger</u> simply stand for the proposition that "a court does not abuse its discretion if it decides to require a prima facie showing that class treatment is appropriate before allowing discovery on issues pertaining to class certification." <u>See</u> <u>Kaminske v. JP Morgan Chase Bank N.A.</u>, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995, at *2 (C.D. Cal. 2010). "[T]here is nothing in <u>Doninger</u> and <u>Mantolete</u> that suggests that a prima facie showing is mandatory in all cases, and it very well may be the case that courts routinely do not require such a showing." <u>Id.</u>

More important, Plaintiff here alleges, among other things, that he and other similarly situated employees "were non-exempt employees within the meaning of the Oregon Law and . . .

17 - OPINION AND ORDER

have not been paid overtime wages."  Second Am. Comp. and Jury Demand, ¶ 12.  He further alleges that Defendants misclassified him and others similarly situated as exempt and willfully violated their rights by failing to pay them overtime compensation and other wages.  Id., ¶¶ 19, 32, 37.  In light of Plaintiff's operative complaint, I find that the production of the information sought by Plaintiffs here is likely to produce substantiation of the class allegations and is reasonably calculated to lead to the discovery of evidence relevant to class certification.  See Fed. R. Civ. P. 26(b)(1).

Finally, I find it noteworthy that the Ninth Circuit held, "Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted."  Vinole, 571 F.3d at 942.  Under the facts in the present case and at this early pre-class certification stage, I conclude that denying the discovery of information that Plaintiff seeks here would be improper.  See Doninger, 564 F.2d at 1313 (concluding that "[t]he propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses.  To deny discovery in a case of that nature would be an abuse of discretion.").

## B. Craig Opt-Outs

Defendants assert that the majority of Oregon ASMs already received notice in Craig and have elected not to opt in as plaintiffs in that case (hereinafter "Craig opt-outs").  They contend that by seeking the names and contact information of Craig opt-outs, Plaintiff seeks a "second bite at the apple" by asking for the same private information.

18 - OPINION AND ORDER

Defendants rely on <u>Hill v. R&L Carriers Shared Services, LLC</u>, No. C 09-1907 CW (MEJ), 2010 WL 4175958, at *1 (N.D. Cal. 2010) for the proposition that <u>Craig</u> opt-out contact information should not be disclosed to Plaintiff because of privacy concerns.  <u>Hill</u>, however, is distinguishable on its facts.

In that case, the court conditionally certified a class of similarly situated employees employed as City Dispatchers and ordered the defendant to "disclose to [p]laintiff . . . the number, location and actual job titles of persons who [were] classified as dispatchers."  <u>Id.</u> at *1.  "Defendant provided the class members' contact information to a third-party administrator, who propounded notice to all putative class members."  <u>Id.</u>  Defendant also "disclosed the number, location and actual job titles of putative class members to [p]laintiff."  <u>Id.</u>  After notice was given to the putative class members, only two putative members in California opted into the case.  <u>Id.</u>  Plaintiff thereafter sought "production of names, addresses and telephone numbers of 'dispatcher employees' in California who . . . opted out, arguing that they [were] necessary for supporting its motion for class certification pursuant to Federal Rule of Civil Procedure 23."  <u>Id.</u>  The court held that "considering the third parties' privacy rights and the history of discovery disputes[,] . . . it [was] inappropriate to order [d]efendant to provide the names, addresses, and telephone numbers of non-opt-in plaintiffs at [that] point."  <u>Id.</u> at *2.

In contrast to <u>Hill</u>, here Plaintiff seeks contact information from putative class members who have opted out in a separate prospective class action, not the prospective class action here.  Furthermore, the court in <u>Hill</u> precluded plaintiff from discovering the contact information of opt-out plaintiffs in part because of the "history of discovery disputes."  <u>Id.</u> at *2.  The court in

Hill, however, did not explain what it meant by "history of discovery disputes."  Accordingly, I find the court's decision there inapplicable to the present case.

Defendants contend that nearly all of the cases on which Plaintiff relies involve FLSA actions, were brought before any FLSA notice or opt in process had occurred, and were often brought for the purpose of facilitating the notice and opt-in process.[17]  They assert that here Plaintiff has not provided any case law or analysis entitling him to private information of Craig opt-outs.  I disagree.

Among other cases, Plaintiff cites Babbitt, No. C-92-1883 SBA (PJH), 1992 WL 605652, at *1.  In that case, six plaintiffs sought class certification for an employment discrimination suit under Title VII, 42 U.S.C. § 2000(e) and California's Fair Employment and Housing Act ("FEHA").[18]  Id. at *1.  The court there ordered defendant to produce the "names, addresses, telephone numbers and social security numbers of current and past employees since 1985."  Id.  It held, in part, that under Fed. R. Civ. P. 26(b)(1), "parties in a civil action may obtain discovery of any non-privileged information which is 'relevant to the subject matter involved in the pending

---

[17] FLSA provides that an action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" to recover damages for the failure to pay wages or overtime compensation.  29 U.S.C. § 216(b).  Such an action is known as a "collective action."  E.g., Harkins v. Riverboat Servs., Inc., 385 F.3d 1099, 1101 (7th Cir. 2004).  A FLSA "collective action" differs from a class action under Fed. R. Civ. P. 23.  While the existence of a Fed. R. Civ. P. 23 class action "does not depend in theory on the participation of other class members," who can either opt in or opt out, a FLSA case cannot become a collective action unless other plaintiffs affirmatively opt in by giving written and filed consent.  Smith v. T-Mobile USA Inc., 570 F.3d 1119, 1122-23 (9th Cir. 2009).

[18] Two of the named plaintiffs in that case also alleged defendant implemented discriminatory policies and practices against Hispanics on the basis of their national origin in violation of 42 U.S.C. § 1981, Title VII, and FEHA.

action . . .' or is 'reasonably calculated to lead to the discovery of admissible evidence' at trial." Id. at *5.

Although the court in Babbit did not address the issue of whether the names and addresses of opt-out plaintiffs in another case are discoverable, it relied on the general rule that a district court has "broad discretion" to control the class certification process and to determine whether discovery will be permitted. See Vinole, 571 F.3d at 942. Given this court's broad discretion to control the class certification process and discretion in determining whether discovery will be permitted, I hold that Plaintiff may discover the contact information he seeks here. See Vinole, 571 F.3d at 942. The contact information that Plaintiff seeks to discover is relevant to determining numerosity, typicality, commonality and representativeness pursuant to Fed. R. Civ. P. 23, and ultimately whether the action may be maintained as a class action. Accordingly, they are discoverable.

### C. Plaintiff's Access to Putative Class Members

Defendants assert that Plaintiff's law firm Klafter already represents thirty-one ASMs who opted in to Craig and who are putative class members in this case. They rely heavily on Knutson v. Blue Cross & Blue Shield, 254 F.R.D. 553, 558 (N.D. Minn. 2008) for the proposition that "this is not a case . . . where a plaintiff has been given no access to contact information by [Defendants] and . . . is unlikely to possess such information." They assert that Plaintiff already has access to information about the identities of other ASMs because he worked for Defendants for over three years and his wife is an ASM who still works for Defendants.

I find Defendants' reliance on Knutson misplaced. First, in Knutson, the court denied plaintiff's motion to compel discovery of the contact information of current and former customer-

service representatives at defendant's call centers because plaintiff admitted that she only "need[ed] the information to solicit others to participate" and because the court "[did] not believe that putting [defendant] to [sic] the burden and expense of producing contact information for more than 1,200 people [would] serve much (if any) benefit."[19]  See Id. at 556, 558.  By contrast, here Plaintiff does not seek the discovery of the contact information solely to "solicit others to participate."  Plaintiff has repeatedly argued that it needs the contact information to investigate whether Defendants made a common decision regarding classification, or whether the DMs and SMs made individualized classification decisions regarding each ASM.[20]

Second, unlike the defendant in Knutson, here Defendants do not argue or show that producing the information sought by Plaintiff would be unduly burdensome or expensive.  Lastly, the plaintiff in Knutson sought a "collective action" pursuant to FLSA, whereas here Plaintiff seeks a class action pursuant to Fed. R. Civ. P. 23.  Discovery in a FLSA claim is not the same as discovery in a Fed. R. Civ. P. 23 class action.  See, e.g., Oropeza v. Appleillinois, LLC, No. 06 C 7097, 2010 WL 3034247, at *4 (N.D. Ill. 2010) (stating that the "'representative' discovery in a FLSA claim is not the same as 'representative' discovery in a Rule 23 class action where discovery may be limited to the named plaintiffs whom the court has already decided are representative.").  Furthermore, "FLSA also does not incorporate Rule 23's numerosity,

---

[19] Plaintiff in that case sought discovery of "'[c]omplications sufficient to show the names, dates of employment, and last known address and phone numbers, salaries, bonuses and other compensation, of current and former [customer-service] Representatives at [d]efendant's call centers located in Eagan, Minnesota and Virginia, Minnesota . . . who were employed by [d]efendant at any time from February 29, 2002 to the present." Id. at 555 n.3.

[20] At oral argument on April 26, 2011, Plaintiff's counsel stated that it also sought discovery of the contact information to facilitate notice to potential plaintiffs.

22 - OPINION AND ORDER

commonality, typicality, and adequacy criteria for class certification.  It requires only that collective action plaintiffs be 'similarly situated.'" <u>Prescott v. Prudential Ins. Co.</u>, 729 F. Supp. 2d 357, 359 (D. Me. 2010) (citation omitted).  Thus, FLSA allows plaintiffs to proceed collectively "based on a lesser showing than that required by [Fed. R. Civ. P. 23]." <u>Id.</u>  Accordingly, Defendants' reliance on <u>Knutson</u> is unpersuasive.

Defendants assert that Plaintiff's lawyers have a relationship with another thirty putative class members, approximately 15% of the putative class, who are their clients in <u>Craig</u>.  They cite <u>Kingsberry v. Chi. Title Ins.</u>, 258 F.R.D. 668, 670-71 (W.D. Wash. 2009) and <u>Currie-White v. Blockbuster, Inc.</u>, No. C 09-2593 MMC (MEJ), 2010 WL 1526314, at *3 (N.D. Cal. 2010)  for the proposition that many courts limit pre-certification discovery to a much smaller number of putative class members.

I am not persuaded by the court's decision in <u>Kingsberry</u>.  In that case, the court limited defendant to "produc[ing] a random 10% sample of reported refinance lender title <u>insurance policies</u> from 2001 through 2008" for the purpose of preventing "undue burden" on the defendant, and also ordered defendant to produce "testifying witnesses . . . pursuant to Fed. R. Civ. P. 30(b)(6)" for Oregon, Tennessee, and Michigan.[21]  <u>Kingsberry</u>, 258 F.R.D. at 670-71 (emphasis added).

---

[21] Fed. Civ. R. Civ. P. 30(b)(6) governs notices or subpoenas directed to organizations, and provides, in pertinent part:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . .  The persons designated must testify about information known or reasonably available to the organization.

In contrast to that case, here Plaintiff seeks contact information of similarly-situated employees in Oregon, not title insurance policies spanning a period of approximately eight years in three different states as in <u>Kingsberry</u>.  Given the geographic scope and the document requests made by plaintiffs in <u>Kingsberry</u> it is easy to see why the court there limited defendant's pre-certification discovery as it did.  Furthermore, unlike the defendant in <u>Kingsberry</u>, Defendants here fail to show or even argue that Plaintiff's discovery requests would be unduly burdensome.

I am equally not persuaded by the court's decision in <u>Currie-White</u>.  In that case, defendant argued that plaintiff's discovery request for contact information of all current and former employees of defendant was burdensome because it included more than 9,000 individuals from over 500 stores throughout California.  <u>Id.</u> at *2.  In contrast, here Defendants fail to provide a well-articulated argument as to why Plaintiff's discovery request would be unduly burdensome.  They fail to state how many employees or stores that Defendants have in Oregon, and more importantly, do not even contend that it would be unduly burdensome to provide Plaintiff with the contact information.  In fact, I find that <u>Currie-White</u> goes against Defendants' position.  There the court expanded the scope of discovery to include contact information of putative class members not only in the two stores that plaintiff worked at, but also ten additional stores where she did not work at because it would be helpful in allowing plaintiff to "substantiate her class allegations."  <u>See</u> <u>Id.</u> at *3.

I am not persuaded by Defendants arguments, and find that Plaintiff is entitled to discovery of the information he seeks here.

**D. Regulation of Subsequent Communications With the ASMs**

Defendants assert that if this court orders the production of contact information of the ASMs, then it must regulate the communications between Plaintiff's counsel and putative class members to ensure there is no improper solicitation of new named plaintiffs or other inappropriate statements.

The foundation of this court's duty and broad authority regarding communications with putative class members is found in Fed. R. Civ. P. 23(d), which provides, in relevant part, that the court may make appropriate orders "requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given . . . to some or all of the members of any step in the action," and "imposing conditions on the representative parties."  This court has the authority to limit communications between litigants and putative class members prior to class certification, subject to restrictions mandated by the First Amendment. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981).  In Mevorah v. Wells Fargo Home Mortgage, No. C 05-1175 MHP, 2005 WL 4813532 *3 (N.D. Cal. 2005) (citations and quotations omitted), the court stated, in pertinent part:

> Pre-certification communications to potential class members by both parties are generally permitted, and also considered to constitute constitutionally protected speech.  As such, any limitations on pre-certification communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.

"To the extent that the district court is empowered . . . to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened."  In re M.L. Stern Overtime Litig., 250 F.R.D. 492, 496 (S.D. Cal. 2008) (citations omitted).  "It is

25 - OPINION AND ORDER

not enough that a potentially coercive situation exists. . . . The court cannot issue an order without evidence that a potential for serious abuse exists." Id.

While this court recognizes its authority to regulate communications with putative class members, it also recognizes that such authority is warranted "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." See Gulf Oil Co., 452 U.S. at 101. At this point, I find imposing any limitations on communications that either party may have with putative class members would be based on speculation and conjecture, especially in light of the fact that the parties have failed to even assert that any abuse in communications has occurred. Furthermore, Defendants fail to articulate how this court should regulate communications between Plaintiff's counsel and putative class members. Accordingly, I will not address this issue at this point in time.

### E. Plaintiffs' Demand for Private Information

Defendants appear to assert that they are not required to produce the names, contact, or employment information of non-putative class members, including DMs and SMs. They assert that they are not aware of any authority which requires them to do so.[22] Defendants also assert that Plaintiff has no need for the names, contact, or employment information of SMs and DMs. They argue that Plaintiff knows who his managers were and that his counsel can ask all of the thirty-one Craig opt-ins who their managers were. They argue that if plaintiff needs more names

---

[22] Despite Plaintiff's discovery request, Defendants presume that Plaintiff does not seek the names of every ASM in Oregon, which they assert is erroneous because it is "without any time limitation and without excluding those ASMs never classified as exempt from overtime requirements." See Defs.' Resp. to Pl.'s Mot. to Compel, p. 5. Rather, they assume that Plaintiff requests "the names and contact information for all putative class members." Id. (emphasis added).

after that, he can ask that defendants produce for deposition SMs and DMs from identified stores

in the state.

 The scope of federal discovery is broad and provides that a party "may obtain discovery

regarding any matter, not privileged, that is <u>relevant</u> to the claim or defense of any party,

including . . . <u>the identity and location of persons having knowledge of any discoverable matter</u>."

Fed. R. Civ. P. 26(b)(1) (emphasis added).  A district court has wide latitude in controlling

discovery, and its rulings will not be overturned in the absence of a clear abuse of discretion."

<u>Volk</u>, 816 F.2d at 1416-17.

 I find that the contact information here is necessary to determine whether Plaintiff's

claims are typical of the class, and ultimately whether the action may be maintained as a class

action.  Given the broad discovery standards and the possibility that such information could bear

on the issue of class certification, I conclude that Plaintiff is entitled to the contact information it

seeks here.  Defendants arguments to the contrary are insufficient to overcome the broad

standards imposed on discoverability under Fed. R. Civ. P. 26(b)(1).  <u>See</u> <u>Oppenheimer</u>, 437 U.S.

at 351 (recognizing that discovery is not necessarily even limited to the merits of a case, and that

discovery has often been used to illuminate issues upon which a district court must pass in

deciding whether a suit should proceed as a class action); <u>see also</u> <u>Babbitt</u>, No. C-92-1883 SBA

(PJH), 1992 WL 605652 at *1, *6 (ordering defendant to produce the names, addresses,

telephone numbers, and social security numbers of current and past employees since 1985

because "the information could lead to the discovery of admissible evidence relevant to the class

certification issue" in an employment discrimination suit brought under, among other things,

Title VII and 42 U.S.C. § 1981).

27 - OPINION AND ORDER

**F. Ethical Issues Arising From SMs And DMs Who Are Represented by Counsel**

Defendants assert that under ORCP 4.2, a lawyer is prohibited from communicating "on the subject of the representation" with "a person the lawyer knows to be represented by a lawyer on that subject," unless the represented party's lawyer consents, or the opposing lawyer is authorized to make the communication by law or court order.  See ORPC 4.2.  They assert that providing names and contact information of individuals who plaintiff is prohibited from contacting is ill advised and will not further Plaintiff's ability to meet the elements of Fed. R. Civ. P. 23.  I disagree that ethical issues pursuant to ORPC 4.2 require me to preclude the discoverability of contact information which Plaintiff seeks here.

**G. Whether Plaintiff May Contact Indergit SMs**

Defendants assert that disclosing the contact information of SMs allows Plaintiff's counsel to engage in contacts that are ethically perilous and not prudent because some of those SMs have opted in as plaintiffs in Indergit.  They assert that the disclosure of such information also violates the privacy rights of those SMs.  They cite Allen v. Searle, 122 F.R.D. 580, 582 (D. Or. 1988) for the proposition that this court needs to be concerned about the potential for intrusion on the privacy rights of third parties who are strangers to putative class action lawsuits.

As discussed above, I disagree that possible ethical issues concerning Indergit opt-ins should preclude Plaintiff from discovering the contact information it seeks here.  Furthermore, I find Allen, 122 F.R.D. at 582 distinguishable.  Unlike the present case, the issue there was whether the privacy rights of plaintiffs and their sexual partners as third parties to that action outweighed defendant's right to full discovery.  See Id.  In contrast to Allen, the privacy interests at stake here are distinguishable from the more intimate privacy interests, including medical

28 - OPINION AND ORDER

records and sexual histories in <u>Allen</u>.  Accordingly, I am not persuaded by the court's decision in <u>Allen</u>, and Defendants provide no other authority standing for the proposition that under the facts here, Plaintiff is precluded from the discovery it seeks.

In sum, I find the information that Plaintiff seeks here would provide a likelihood of producing "persuasive information substantiating the class action allegations."  <u>See</u> <u>Mantolete</u>, 767 F.2d at 1424-25 (citing <u>Doninger</u>, 564 F.2d at 1313).  Accordingly, denying Plaintiff's motion to compel written discovery under the facts here would be an abuse of this court's discretion.  <u>See</u> <u>Doninger</u>, 564 F.2d at 1312 (stating that "under some circumstances the failure to grant discovery before denying class treatment is reversible error").  Plaintiff is entitled to discover the identification of "Store Managers and District Managers who worked in Defendants' stores in Oregon" and "the names, addresses, dates of employment, and locations of employment of Assistant Store Managers employed by Defendants" as set forth in Plaintiff's First Set of Interrogatories to Defendants, Interrogatory No. 4 and 7.

## III. Motion to Stay

### A. Balance of Competing Interests

On December 6, 2010, the Supreme Court granted certiorari on the following two issues:

1. Whether claims for monetary relief can be certified under Federal Rule of Civil Procedure 23(b)(2)—which by its terms is limited to injunctive or corresponding declaratory relief—and, if so, under what circumstances.

2. Whether the class certification ordered under Rule 23(b)(2) was consistent with Rule 23(a).

<u>See</u> <u>Dukes</u>, 131 S. Ct. at 795; <u>see also</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 2010 WL 3355820, at *i (Aug. 25, 2010) (Pet. for a Writ of Cert.).

Defendants assert that there is no damage or prejudice to Plaintiff if this court were to stay this action.  They argue that the Supreme Court in <u>Dukes</u> is considering the exact class certification issues here, and therefore the decision in <u>Dukes</u> will simplify the class certification issues before this court.  They also contend that because the Supreme Court will opine about the commonality and typicality components of Fed. R. Civ. P. 23, the ruling in <u>Dukes</u> may seriously affect this case.  Defendants further argue that because Plaintiff's Motion for Class Certification is due before the Supreme Court's decision in <u>Dukes</u>, the Supreme Court's decision will disrupt the parties' efforts to complete discovery and result in the parties having to re-brief their arguments, thereby wasting time expended on this case.

Plaintiff argues that Defendants are only raising these arguments now in order to prevent this case from moving forward.  He asserts that since the Supreme Court granted certiorari on December 6, 2010, Defendants have been working with Plaintiff to schedule depositions.  He argues that if Defendants truly believe that <u>Dukes</u>, 131 S. Ct. at 795 would have any bearing on the instant case, they would have filed their motion to stay three months ago, before it participated in any discovery.  They further argue that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  <u>See</u> <u>Lockyer v. Mirant Corp.</u>, 398 F.3d 1098, 1110 (9th Cir. 2005).

Plaintiff, however, provides no clear evidence that Defendants' intent is to delay this proceeding.  Furthermore, contrary to Plaintiff's assertion, the Supreme Court's decision in <u>Dukes</u> suggests that it will address issues related to this case, specifically whether monetary damages

30 - OPINION AND ORDER

may be brought along with injunctive and declaratory relief under Fed. R. Civ. P. 23(b)(2), and if so, under what circumstances.

Plaintiff argues that the Supreme Court's decision in <u>Dukes</u> will only have an indirect impact on class action discovery, and accordingly, the only hardship or inequity present here is the hardship and inequity that Plaintiff would suffer if the proceedings in this case were further delayed. Plaintiff asserts that because Defendants fail to demonstrate that the Supreme Court in <u>Dukes</u> is deciding a rule of law that would define the rights of the parties in this case, they have failed to demonstrate that a clear case of hardship or inequity exists here. Plaintiff contends that the Supreme Court has not certified any issues relating to discovery in class actions, and therefore, the outcome of <u>Dukes</u> should have no effect on the discovery proceedings here. I disagree.

Although granting a stay will delay discovery and formal litigation of Plaintiff's claims here, Plaintiff does not elaborate as to how a delay will result in particular damage to him apart from the delay itself. Moreover, the Supreme Court's proceeding may touch upon some of the class certification issues presented before me. Here, Plaintiff seeks class certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), seeking monetary, injunctive, and declaratory relief. Because the Supreme Court has granted certiorari on the issue of whether claims for monetary relief can be certified under Fed. R. Civ. P. 23(b)(2), which is limited to injunctive and declaratory relief, it is possible that at least some of the issues in this case may be resolved in <u>Dukes</u>, 131 S. Ct. at 795.

Plaintiff also argues that <u>Dukes</u>, 131 S. Ct. at 795 is distinguishable because it is a civil rights gender discrimination case brought under Title VII, 42 U.S.C. § 2000e-5(g), which entitles

31 - OPINION AND ORDER

a plaintiff to enjoin the unlawful employment practice and order the employer to pay back pay

and punitive damages. See 42 U.S.C. § 2000e-5(g).[23]  Plaintiff argues that the key issue in

Dukes,131 S. Ct. at 795 is whether a class may be certified under Fed. R. Civ. P. 23(b)(2) where

a statute allowing injunctive relief also allows the recovery of monetary damages.  Plaintiff

contends that in contrast to 42 U.S.C. § 2000e-5(g), the Oregon wage and hour laws asserted here

do not provide for a remedy that simultaneously allows for injunctive and monetary damages.

I find that Plaintiff interprets the Supreme Court's grant of certiorari in Dukes too

narrowly.  There is no indication that the Supreme Court will only address whether a purported

class may seek class certification under Fed. R. Civ. P. 23(b)(2) brought under a statute allowing

for both injunctive and monetary relief.  Rather, the issue that the Supreme Court will address

appears to be much broader, and involves whether "claims for monetary relief" in general may be

certified under Fed. R. Civ. P. 23(b)(2).  See Dukes, 131 S. Ct. at 795; see also Dukes, 2010 WL

3355820, at *i.

However, I find that Dukes, 131 S. Ct. at 795 is distinguishable on other grounds.  The

Supreme Court in Dukes only granted certiorari on the issue of whether class certification

involving a claim for monetary relief may be brought  under only Fed. R. Civ. P. 23(a) and

23(b)(2).  By contrast, here Plaintiff seeks class certification under Fed. R. Civ. P. 23(a),

23(b)(2), and 23(b)(3).  In fact, at oral argument on April 1, 2011, Plaintiff indicated that he

---

[23] 42 U.S.C. § 2000e-5(g) provides, in pertinent part: "[A] court may enjoin the
respondent from engaging in such unlawful employment practice, and order such affirmative
action as may be appropriate, which may include . . . reinstatement or hiring of employees, with
or without back pay . . . or any other equitable relief as the court deems appropriate."

intends to seek class certification for monetary relief under Fed. R. Civ. P. 23(b)(3) and class

certification for injunctive and declaratory relief under Fed. R. Civ. P. 23(b)(2).

Fed. R. Civ. P. 23(b)(3) permits class certification in actions seeking monetary damages

and applies if "the court finds that the questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." See

Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121 (1994); see, e.g., Lemus v. H & R Block, Enter.,

LLC, No. CV-09-03179 SI, 2010 WL 5069695, at *5 (N.D. Cal. 2010) ("The objective behind

the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency in actions that

primarily involve monetary damages.") (Citations omitted).  Plaintiff may certify the class in the

present case under just Fed. R. Civ. P. 23(b)(3), an issue not before the Supreme Court in Dukes.

See, e.g., Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (stating that class may be

certified if it meets just one of the three categories pursuant to Fed. R. Civ. P. 23(b)) (citation

omitted).  Accordingly, I conclude that the orderly course of justice measured in terms of

simplifying issues and questions of law which could be expected from a stay under the facts here

do not weigh in favor of staying this action.

While Plaintiff construes the Supreme Court's grant of certiorari in Dukes too narrowly,

Defendants read it too broadly.  Defendants argue that the Supreme Court's decision in Dukes

will govern all actions seeking to represent a class of individuals applying for class certification

under Fed. R. Civ. P. 23(a).  The Supreme Court's grant of certiorari in Dukes, however, was

limited to class certification under Fed. R. Civ. P. 23(a) and (b)(2), not Fed. R. Civ. P. 23(a),

(b)(2), and (b)(3) as is the case here.  Accordingly, Defendants' argument is unpersuasive.

**B. ORS Chapter 653 and the Oral Argument Transcript in <u>Dukes</u>**

Defendants contend that Plaintiff may not seek injunctive relief under Fed. R. Civ. P. 23(b)(2) because Oregon law does not allow a private right of action to enjoin violations under ORS chapter 653.  They assert that only the Commissioner of the Bureau of Labor and Industries (the "Commissioner") may bring such actions, citing ORS 653.055(3).[24]  Defendants' arguments, however, are inapposite because staying these proceedings would not help to resolve whether an individual may bring a private right of action under ORS chapter 653.

Defendants also point the court to the oral argument transcripts in <u>Dukes</u> in support of their argument that I must stay this case.  However, I decline to use the oral argument transcripts to reach this decision.

In sum, I am not persuaded that the Supreme Court in <u>Dukes</u> will address all the issues directly affecting this case.  I find that Defendants have failed to show they will suffer any hardship or inequity if required to proceed with this case and have failed to show that staying these proceedings will result in a more orderly course of justice.

**CONCLUSION**

For the reasons set forth above,  (1) Plaintiff's Motion to Compel (doc. #40) and Plaintiff's Motion to Compel Re Depositions (doc. #56) are granted in their entirety; (2) Defendants' Motion for Protective Order Re: Depositions (doc. #48) is denied in its entirety; and

---

[24] ORS 653.055(3) provides in pertinent part:
> The Commissioner of the Bureau of Labor and Industries . . . may, without the necessity of assignments of wage claims from employees, initiate suits against employers to enjoin future failures to pay required minimum wages or overtime pay and to require the payment of minimum wages and overtime pay due employees but not paid as of the time of the filing of suit.

(3) Defendants' Motion to Stay Proceedings (doc. #37) is denied.

IT IS SO ORDERED.

Dated this 9th day of May, 2011.

/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

35 - OPINION AND ORDER